UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cr-00002-JPH-CMM |
| | ) | |
| SHANE M. MEEHAN, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE**

Shane Meehan was indicted in January 2022 with offenses punishable by the death penalty, including the premeditated murder of a federal officer. The government included special findings related to aggravating factors in that indictment, leaving its final decision whether to seek the death penalty for later in this case after its internal decision-making process. The Court and the parties acknowledged at the outset of this case that the government's decision whether it would seek the death penalty would fundamentally impact the Court's management of the case and the parties' case strategy. About six months after the indictment was returned, and after the Court held several status conferences regarding the government's decision, the government informed the Court and Mr. Meehan that it would not seek the death penalty if Mr. Meehan were found guilty. With that decision, which the government confirmed was its final decision, the case proceeded on the premise that this was no longer a death-penalty case.

1

More than three years later, the government reversed course, informing the Court and Mr. Meehan that it would seek the death penalty. Mr. Meehan objects, arguing that the government is bound by its previous decision to not seek the death penalty and that putting the death penalty back on the table at this juncture is unlawful, prejudicial, and fundamentally unfair. He therefore has filed a motion to strike the government's notice of intent to seek the death penalty. For the reasons set forth below, Mr. Meehan's motion to strike the government's notice of intent to seek the death penalty is **GRANTED**. Dkt. [175].

## I.
## Facts and Background

On July 7, 2021, Federal Bureau of Investigation Task Force Officer Greg Ferency was shot and killed outside the FBI's Terre Haute office. Shortly thereafter, the United States charged Mr. Meehan in a criminal complaint with the premeditated murder of TFO Ferency. Dkt. 10.

On January 19, 2022, the United States filed a grand jury indictment charging Mr. Meehan with: (1) premeditated murder of a federal officer in violation of 18 U.S.C. §§ 1111, 1114; (2) attempted arson of federal property in violation of 18 U.S.C. § 844(f)(1); and (3) use/carry/discharge of a firearm during and in relation to a crime of violence, causing death, in violation of 18 U.S.C. § 924(j). Dkt. 39. For Counts 1 and 3, the statutory maximum penalty is death. 18 U.S.C. §§ 1111(b), 1114(a); 18 U.S.C. § 924(j). The indictment included special findings that preserved the government's ability to seek the death penalty. *Id.* at 3–4; 18 U.S.C. §§ 3591, 3592.

From the very start of the case, the Court and the parties acknowledged that the government's decision as to whether it would seek the death penalty would fundamentally impact how the case would be managed and litigated. At the April 25, 2022, status conference, the government outlined the process that the Department of Justice, including "Main Justice" in Washington, D.C., would follow to determine whether to seek the death penalty. Dkt. 68 at 4–7. Also at this conference, defense counsel explained "why death penalty cases are different." *Id.* at 9. Because of those fundamental differences, she concluded, "when I'm looking at this case as a death penalty lawyer, I'm looking at it very differently than I am as just a defense lawyer who is battling the Government and their ability to prove all of their elements beyond a reasonable doubt.'" *Id.* at 11–12. Citing the Department of Justice Manual, defense counsel asked the Court to "schedule a deadline for filing a notice of intent to seek the death penalty." *Id.* at 14. The government responded that the DOJ's decision-making process was lengthy and complex, so it couldn't predict when it would have a decision. *Id.* at 17–18. Because it was unknown at that point whether the government would seek the death penalty, the Court did not set a trial date and instead set the case for another status conference in June 2022. *Id.* at 22–23.

At the June status conference, approximately six months after the indictment was filed, the government informed the Court that while its internal process was moving forward, no decision had been made. Dkt. 76 at 3–4. So, the Court again did not set a trial date and scheduled another status

3

conference, for July 28, 2022. *Id.* at 6. The Court also ordered that by that date, the government was to either notify defense counsel that it will recommend an expedited decision that it would not seek the death penalty or have made a firm commitment as to a date when defense counsel may make their mitigation presentation to decision-makers at the U.S. Attorney's Office. *Id.*

On July 11, 2022, the government filed its notice that it would not seek the death penalty:

**NOTICE**

The United States of America, by counsel, Zachary A. Myers, United States Attorney for the Southern District of Indiana, and William McCoskey, Lindsay Karwoski, and Kathryn Olivier, Assistant United States Attorneys, respectfully gives notice to the Court that it will not seek the death penalty in this cause.

Dkt. 75.

At the July 28, 2022, status conference, the Court asked the government if its notice "represents the final decision having been made and approved at all necessary levels at Main Justice," and the government confirmed that it did. Dkt. 166 at 2. The Court stated that resolution of the death penalty issue was a "game changer, creating a different landscape" of the case, *id.* at 6, and set the case for trial commencing on May 8, 2023, dkt. 80.

On February 21, 2023, however, defense counsel filed a motion for a psychological evaluation to determine if Mr. Meehan was competent, that is, whether he was unable to understand the nature and consequences of the

4

proceedings against him or to assist properly in his defense. Dkt. 81; *see* 18 U.S.C. §§ 4241, 4242. So, beginning in March 2023, Mr. Meehan underwent a series of psychological evaluations. Dkt. 82; dkt. 119; dkt. 121; dkt. 124; dkt. 141; dkt. 151; dkt. 163; dkt. 176. Meanwhile, on April 5, 2024, defense counsel provided notice of an insanity defense. Dkt. 122; *see* Fed. R. Crim. P. 12.2(a). Proceedings related to psychological evaluations and the restoration process have taken more than two years, *see* dkt. 154, resulting in multiple continuances of the trial date. *see* dkt. 125; dkt. 138; dkt. 154; dkt. 177. Trial is currently set for August 17, 2026. Dkt. 182.

On November 18, 2025, while the parties were in the process of preparing filings related to the competency evaluations, dkt. 173, the government filed a notice of intent to seek the death penalty, indicating that if Mr. Meehan is convicted of Count 1 or Count 3, then "the United States will seek a sentence of death." Dkt. 170. Mr. Meehan has filed a motion to strike that notice. Dkt. 175.

## II.
## Analysis

Mr. Meehan sets forth several legal bases in support of his position that the government must be held to its decision announced on July 11, 2022, that it would not seek the death penalty. Dkt. 175 at 10–24. The government responds that regardless of its prior notice that it would not seek the death penalty and the passage of several years, it still has the authority and discretion to change its position and seek the death penalty. Dkt. 185.

5

Having considered all arguments raised by the parties, the Court concludes that the doctrine of judicial estoppel, applied to the specific facts and circumstances of this case, precludes the government from seeking the death penalty here.  The government does not identify changed circumstances related to this case, such as newly discovered evidence or a change in the law, in support of its position.  As the government's brief explains, the previous presidential administration chose to not pursue the death penalty against Mr. Meehan and the current presidential administration "reconsidered and reversed" that decision.[1]  Dkt. 185 at 16.  While the Executive Branch has extremely broad discretion to decide whether and when to seek the death penalty, it may not do so here where more than three years have passed since the government represented to the Court and defense counsel that it had unequivocally decided that it would not seek the death penalty.

The doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to

---

[1] The decision to reverse course, as Mr. Meehan points out, was preceded by President Trump's Executive Order 14164 signed January 20, 2025, "Restoring the Death Penalty and Protecting Public Safety," which ordered the Attorney General to seek the death penalty in certain cases, including cases involving the murder of a law enforcement officer.  Dkt. 175 at 8; 90 Fed. Reg. 8463.  Thereafter, Attorney General Bondi issued a February 5, 2025 memorandum to attorneys in the Department of Justice titled, "Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions."  Dkt. 175 at 8-9.  Attorney General Bondi's memo states, "Absent significant mitigating circumstances, federal prosecutors are expected to seek the death penalty in cases involving the murder of a law-enforcement officer." *Id.* at 9.  The memorandum further also directed the Capital Review Committee "to review no-seek decisions in all pending capital-eligible cases (*i.e.*, death-eligible cases that have not yet resulted in a conviction) charged between January 20, 2021, and January 19, 2025.  This group shall reevaluate no-seek decisions and whether additional capital charges are appropriate. . . . The review required by this paragraph shall be completed within 120 days." *Id.*

the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001); *see Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014); *Levinson v. United States*, 969 F.2d 260, 265 (7th Cir. 1992). So "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken." *Zedner v. United States*, 547 U.S. 489, 504 (2006).

The government first argues that "it is unclear whether judicial estoppel can even apply to the federal government." Dkt. 185 at 14. While the Supreme Court has stated that "the Government may not be estopped on the same terms as any other litigant," it has been "hesitant . . . to say that there are no cases in which the public interest in ensuring that the government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with the government." *Heckler v. Cmty. Heath Servs. of Crawford Cnty.*, 467 U.S. 51, 60–61 (1984); *see also Niz–Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."). And in *Maine*, the Supreme Court applied judicial estoppel against New Hampshire while recognizing the same underlying concerns about applying estoppel against a state government. 532 U.S. at 755–56; *see also United States v. Penn. Indus. Chemical Corp.*, 411 U.S. 655,

7

674 (1973) (explaining that the government can be "prevent[ed] . . . from proceeding" with a federal criminal prosecution if the defendant relied on federal guidance indicating that its conduct was not criminal). The government's status therefore is not an exemption, but an important part of the estoppel analysis. Given the Supreme Court's admonitions in these cases, the Court approaches Mr. Meehan's judicial estoppel argument with great caution and care, mindful that "the Government may not be estopped on the same terms as any other litigant." *Maine*, 532 U.S. at 755–56.

While the doctrine of judicial estoppel is equitable and therefore "cannot be reduced to a precise formula or test," it typically focuses on several factors. *Zedner*, 547 U.S. at 504. "First, a party's later position must be clearly inconsistent with its earlier position." *Id.* "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position." *Id.* And a "third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

Here, the government's notice of intent to seek the death penalty is a complete reversal that is "clearly inconsistent" with its prior decision to not seek the death penalty. *Id.* And the government was not merely correcting some "inadvertence or mistake," *Maine*, 532 U.S. at 754, as the decision in July 2022 to not seek the death penalty was made deliberately after a careful, months-long process within and among the United States Attorney's Office and Main Justice. *See* dkt. 68; dkt. 75; dkt. 76 (describing the process that the

8

government followed between July 2021 and July 2022 that culminated with the decision to not seek the death penalty against Mr. Meehan). Indeed, the government concedes that it intentionally reversed its position after more than three years of pursuing this prosecution under its prior "notice to the Court that it will not seek the death penalty in this cause." Dkt. 75; dkt. 185 at 16.

The Court also accepted the government's decision not to seek the death penalty at the July 28, 2022 status conference, more than three years before the government's reversal. At that conference, the Court asked, and the government confirmed, that its decision not to seek the death penalty had "been made and approved at all necessary levels" and was its "final decision." Dkt. 166 at 2. In fact, the very purpose of the Court's status conferences during the early stages of this case was to ensure that the government reached a timely decision whether to seek the death penalty that the Court and Mr. Meehan could rely on. *See* dkt. 68 at 23–24; dkt. 166 at 2.

So, after the "no seek" decision was made in July 2022, the Court then turned to the next steps in the case—including discovery and a trial date—that were ripe after the government's decision. Dkt. 166; *see* dkt. 76. Similarly, the subsequent competency proceedings in this case have been directed solely at Mr. Meehan's competency to stand trial and a potential insanity defense—not to any aspects of potential death-penalty litigation. *See* dkt. 82; dkt. 121; dkt. 141; dkt. 167; dkt. 174. This procedural path reflects the Court's acceptance of the government's decision not to seek the death penalty. *See United States v. Spurlock*, 782 F. Supp. 3d 987, 1010 (D. Nev. 2025) (striking the government's

9

notice that it would seek the death penalty based on judicial estoppel); *United States v. Suarez*, 801 F. Supp. 3d 872, 877 (N.D. Cal. 2025) (same); *United States v. Constanza–Galdomez*, 787 F. Supp. 3d 131, 147–48 (D. Md. 2025) (same)

    Next, the government's reversal would impose an unfair detriment on Mr. Meehan.  The government does not contest that, after its "final" decision that it would not seek the death penalty, "defense counsel strategized as if this were not a death penalty case" for more than three years.  Dkt. 175 at 3.  Moreover, Mr. Meehan's counsel explained in April 2022 that strategic decisions are fundamentally different in a death penalty case.  Dkt. 68 at 9 (explaining that, based on 39 years working on capital cases, "they are quantitatively and qualitatively different" than "a murder case on steroids" and from the beginning must be approached "very differently than [just] battling the government and their ability to prove all of their elements beyond a reasonable doubt"); *accord Spurlock*, 782 F. Supp. 3d at 1011–12.  In other words, as the Court recognized at the time, the government's decision not to seek the death penalty was "a game changer, creating a different landscape."  Dkt. 166 at 6; *accord Constanza–Galdomez*, 787 F. Supp. 3d at 148 ("At every step, preparation for a death penalty trial differs from preparation for an ordinary criminal trial.").  This case has been proceeding on that landscape for more than three years—through substantial developments including extensive competency

proceedings—and it would be unfairly prejudicial to fundamentally alter it now.[2]

The government's argument that Mr. Meehan could not have "reasonably relied" on the "no-seek" notice "because there was no clear and definite promise" ignores the nature of death penalty cases.  Dkt. 185 at 17–18.  As explained above, the fundamental differences between death penalty cases and non-death penalty cases affect case management and defense strategy from the earliest stages of a case.  *See Spurlock*, 782 F. Supp. 3d at 1011–12 ("Preparation for a non-capital trial cannot be simply imported into a capital case, with its combined guilt and penalty phases.  In order to present an 'integrated defense theory' in a capital case, it is 'critical' that such a theory be formulated 'well before trial.'" (quoting ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases)).

In short, and as evident from the complex docket, the Court and defense counsel have made numerous decisions over more than four years that have shaped the case to its present form.  It would be impossible to review this docket and meaningfully evaluate the extent to which each of those decisions were made in reliance of the government's no-seek notice from July 2022.  Suffice to say that the no-seek decision underpinned and infused every one of the decisions, leaving no way to fully, fairly, and meaningfully restore the

---

[2] The government argues that bad faith is required for judicial estoppel, dkt. 185 at 15, but neither the Supreme Court nor the Seventh Circuit has imposed that requirement, *see Zedner*, 547 U.S. at 504, so the Court addresses unfair detriment without determining whether the government acted in bad faith.

11

parties to the positions they would have been in had the government never provided its "final" no-seek notice.  Simply put, the bell cannot be unrung.

Finally, as discussed above, estoppel is applied more sparingly when the government is the party to be estopped.  *Maine*, 532 U.S. at 755; *see Heckler*, 467 U.S. at 60 ("[I]t is well settled that the government may not be estopped on the same terms as any other litigant.").  That's because "broad interests of public policy may make it important to allow a change of positions" to not "compromise a governmental interest in enforcing the law."  *Maine*, 532 U.S. at 755.  But the government can be estopped even from pursuing a criminal prosecution if it misleads a defendant into believing that its conduct was not criminal.  *See Penn. Indus. Chemical Corp.*, 411 U.S. at 674 ("[W]e think there can be no doubt that traditional notions of fairness inherent in our system of criminal justice prevent the government from proceeding with the prosecution."); *Heckler*, 467 U.S. at 60 n.12.  The same principle applies here, when the government has formally informed the Court and the defendant of its final decision that it will not seek the death penalty.  *See Spurlock*, 782 F. Supp. 3d at 1010; *Suarez*, 801 F. Supp. 3d at 877; *Constanza–Galdomez*, 787 F. Supp. 3d at 147–48.

Applying judicial estoppel in this case therefore would not "compromise a governmental interest in enforcing the law."  *Maine*, 532 U.S. at 755.  The charges against Mr. Meehan are proceeding, with two of the charges carrying a mandatory life sentence.  18 U.S.C. §§ 1111(b), 1114(a); 18 U.S.C. § 924(j).  Seeking the death penalty, by contrast, is discretionary on the part of the

government based on whether it "believes that the circumstances of the offense are such that a sentence of death is justified."  18 U.S.C. § 3593(a).  The government made that decision in this case, after full consideration, in the summer of 2022.  *See* dkt. 75; dkt. 166.  There have been no changes in the "pertinent statutory provisions" or "in facts essential to the prior" decision.  *Maine*, 532 U.S. at 755.  Instead, the government's notice cites only facts underlying the charges against Mr. Meehan that were known to the government at the time of its initial decision not to seek the death penalty.  Dkt. 170; *see Maine*, 532 U.S. at 749 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.").

    In this situation, the government's reliance on public policy considerations carries less weight.  *See United States v. Owen*, 54 F.3d 271, 275 (6th Cir. 1995) (cited in *Maine*, 432 U.S. at 755) (judicially estopping the government from making an argument previously "presented by the government and accepted by the Court").  As the Supreme Court has explained, the public's interest in the government's ability to enforce a law—here, a discretionary penalty—can be "outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their government."  *Heckler*, 467 U.S. at 60.  That countervailing interest is at its highest in this case, when the government reverses its position on such an important issue with no relevant changes in law or facts after years of reliance.  *See Maine*, 532 U.S. at 749.

\*   \*   \*

In sum, the Court's decision here does not address whether the government may ever seek the death penalty after filing a notice that it would not do so. *See Maine,* 532 U.S. at 751. ("[W]e do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts."). "In this case, [the Court] simply observe[s] that the factors above firmly tip the balance of equities in favor of barring" the government from reversing its decision not to seek the death penalty. *Id.* The government's notice of intent to seek the death penalty is therefore prohibited by judicial estoppel.[3]

### III.
### Conclusion

Mr. Meehan's motion to strike the government's notice of intent to seek the death penalty is **GRANTED**, dkt. [175], and the notice is **STRICKEN WITH PREJUDICE**, dkt. [170].

**SO ORDERED.**

Date: 2/17/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[3] The Court therefore does not address Mr. Meehan's other arguments in favor of striking the government's notice of intent.