UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>SHANE M. MEEHAN,<br>    Defendant. | 2:22-cr-00002-JPH-CMM |

**MOTION FOR EXTENSION TO FILE OBJECTION TO**
**MENTAL COMPETENCY EVALUATION**

Comes now, Shane Meehan, by counsel, and requests an extension of time to file any objections to the mental competency evaluation as ordered at Docket 189. In support, counsel shows the following:

1. On August 29, 2025, the Court granted the defense motion for extension of time to file objections to Mr. Meehan's mental competency evaluation. [Dkt 156]. Mr. Meehan had been undergoing competency restoration procedures at FMC Butner for several months. On December 4, 2025, the Court and parties were notified that Mr. Meehan had arrived in the district. Per the Court's order, objections to the finding that Mr. Meehan is currently competent were due on January 2, 2026.

2. Counsel filed an unopposed belated objection on January 9, 2026 [Doc. 187]. This Court granted that motion to March 16, 2026 [Doc. 189].

3. On February 17, 2026, this Court granted defendant's Motion to Strike the Death Penalty in this matter [Doc. 190]. This Court's actions have significantly changed the landscape of the litigation however it is unclear if those changes are permanent. The Government has indicated that it may yet appeal this Court's decision but that a "final" decision has yet to be made. The Government's decision significantly impacts how the defense must

approach this case and the competency question.

4. This Court has recognized that "the competency proceedings in this case have been directed solely at Mr. Meehan's competency to stand trial and a potential insanity defense – not to any aspects of potential death penalty litigation" [Doc. 190, p. 9]. Any decision regarding whether or not to object to the forensic report and the substance of said objection would be materially affected by whether the case will remain non-capital or whether the death penalty remains a possibility.

5. This Court noted that the government did not contest defense counsel's position that they have strategized this case as if it were not a death penalty case for three years [Doc. 190, p.10]. Despite this Court's order, the question of whether this case will remain as non-capital is not final due to the Government's consideration of an appeal and the possibility, however slim it may be, of a reversal. The outcome of the decision on the death penalty was recognized by this Court as a "game changer" and one that creates a "different landscape" [Doc. 190, p 11].

6. This Court noted that "the Court and defense counsel have made numerous decisions over more than four years that have shaped the case to its present form. It would be impossible to review this docket and meaningfully evaluate the extent to which each of these decisions were made in reliance of the Government's no-seek notice from July 2022. Suffice to say that the no-seek decision underpinned and infused every one of the decisions . . ." [Doc. 190, p. 11].

7. This Court's assertions noted above are unquestionably correct. The ABA Guidelines for the Appointment and Performance of Defense Counsel in

Death Penalty Cases (2003) have long been considered a guide for what is reasonable attorney conduct, and thus what constitutes effective representation in a capital case. *Padilla v. Kentucky*, 559 U.S. 356 (2010); see also, *Bobby v. Van Hook*, 558 U.S. 4 (2009) (ABA Guidelines are not "inexorable commands" but can be "useful as guides to what reasonableness entails" under the Sixth Amendment); see also, *Wiggins v. Smith*, 539 U.S. 510 (2003) (failure to conduct adequate social history as required by the ABA Guidelines required reversal of death sentence).

8. Guideline 10.8 requires counsel to "evaluate each potential claim in light of:

    (a) the unique characteristics of death penalty law and practice; and

    (b) the near certainty that all available avenues of post-conviction relief will be pursued in the event of conviction and imposition of a death sentence; and (c) the importance of protecting the client's rights against later contentions by the government that the claim has been waived, defaulted, not exhausted, or otherwise forfeited; and (d) any other professionally appropriate costs and benefits to the assertion of the claim."

9. "One of the most fundamental duties of an attorney defending a capital case at trial is the preservation of any and all conceivable errors for each stage of appellate and post-conviction review. Failure to preserve an issue may result in the client being executed even though reversible error occurred at trial." Stephen B. Bright, *Preserving Error at Capital Trials*, The Champion, Apr. 1997, at 42-43. Professor Bright provides a jarring example of this precept in practice. John Eldon Smith was executed by the State of Georgia even though he was sentenced to death by a jury

selected from a jury pool from which women were unconstitutionally excluded. Mr. Smith's lawyers failed to preserve the claim, and the federal courts therefore refused to review it. Smith's codefendant who was described as the "mastermind" of the crime did preserve the claim and received a complete retrial. At that retrial, Smith's codefendant was sentenced to life in prison with a parole eligibility date rather than the death penalty. See *Smith v. Kemp*, 715 F.2d 1459, 1476 (11th Cir. 1983) (Hatchett, J., concurring in part and dissenting in part).

10. The competency decision is no different from the decisions counsel have made over the previous four years. It will be meaningfully impacted by whether this case might yet become a capital case. The Government has every right to appeal this Court's decision but until defendant knows whether the government is going to appeal defense counsel are unable to make an informed decision on how to proceed on the objection.

11. Counsel have not wasted the period of time since this Court granted the extension. All counsel have met with Mr. Meehan in person during this period. Counsel have facilitated meetings between their experts and Mr. Meehan since he was returned to the district. Counsel have been able to consult with only one of them regarding his findings. Counsel have been unable to consult with the expert who evaluated Mr. Meehan most recently due to lead counsel's medical issues which are set forth below.

12. Counsel have also attempted to secure records, including recently created medical records from the competency evaluations and restoration proceedings. There is an ongoing effort to secure some highly relevant records – actual brain imaging scans as opposed to reports of the scans

which is what was originally provided. Most recently, the agencies where records were requested determined the releases Mr. Meehan presented were too old and requested more current releases. Counsel secured current releases and provided them to the relevant agency.  Counsel is also in the process of securing records from FMC Butner during the evaluation and restoration period. A simple request for those records was denied by FMC Butner. Counsel has now supplied the releases Butner requires to release the records.

13. As set forth in the prior motion lead defense counsel is amid a family emergency that began in the middle of November 2025.  That situation continues to greatly impact lead counsel's availability.  Additionally, lead counsel has since undergone her own medical issues. Counsel Foster (who is the sole attorney who will remain if this case becomes capital again) has suffered debilitating back issues that have required her absence from the workplace and complete inability to work productively.

14. Counsel have consulted with AUSA William McCoskey and the government objects to this request.

15.  Based on the above, counsel for Mr. Meehan requests an extension of the time to object to the Competency report in the amount of thirty days after the government decides whether it will appeal this Court's Order striking the Notice of Intent. Meehan also asks the Court to order the government to notify this Court if any Notice of Appeal filed in this matter is an actual Notice of Appeal or merely a placeholder while the government weighs its appellate decision.

Respectfully submitted,

*Monica Foster*
Monica Foster
Chief Federal Defender

*Gwendolyn M. Beitz*
Gwendolyn M. Beitz

*Joseph M. Cleary*
Joseph M. Cleary
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
317-383-3520

## CERTIFICATE OF SERVICE

I certify that on March 11, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Gwendolyn M. Beitz*
Gwendolyn M. Beitz